IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DOREEN SMITH, As Administrator of the Estate of Kenneth C. Smith, | ) ) ) | CASE NO. 1:13-CV-744 |
| Plaintiff, | ) ) ) | JUDGE SOLOMON OLIVER, JR. |
| vs. | ) ) | **MOTION FOR RECONSIDERATION OF FEBRUARY 5, 2016 ORDER** |
| ROGER JONES, | ) ) | **(DOCKET NO. 102) ON REMITTITUR** |
| Defendant. | ) ) ) | |

Plaintiff, through counsel, hereby moves the Court to reconsider the Remittitur Order as part of its decision on Defendant's Motion for Judgment as a Matter of Law, to Amend the Jury Verdict, or Alternatively, to Order a New Trial. Plaintiff asserts that the Court's Remittitur Order has no lawful basis and is unconstitutional.

Plaintiff further asserts that should the Court deny Plaintiff's Motion for Reconsideration and force Plaintiff to consent to remittitur or elect for a new trial on damages, then it is impermissible for the Court to preclude expert evidence in the new trial.

For the reasons that follow, Plaintiff asks the Court to reinstate the original jury verdict for wrongful death damages in the amount of $4.5 million, or in the alternative, grant Plaintiff an additional 7 days from the date of its decision on the instant motion to either consent to the remittitur or request a new trial on damages, and that the new trial option not preclude expert evidence.

1

I. **The Court's Remittitur Ruling Has No Lawful Basis.**

Disturbing a jury verdict and granting remittitur cannot be the product of arbitrary decisions by a court. Instead, a court must make certain findings to before granting a remittitur motion. As the Court itself explained:

> Generally, "[a] jury verdict should not be remitted by a court unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for the party's loss." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004) (citing *Gregory v. Shelby Cty.*, 220 F.3d 433, 443 (6th Cir. 2000)). Maintaining the jury award is favored "[u]nless the award is (1) **beyond** the range **supportable by proof** or (2) so excessive as **to shock the conscience**, ... or (3) by result of a mistake." *Id.* (citing *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 156 (6th Cir. 1996)). In other words, "[a] trial court is within its discretion in remitting a verdict only when, after reviewing all of the evidence in the light most favorable to the awardee, it is convinced that the verdict is **clearly excessive**, resulted from **passion**, **bias** or **prejudice**, or is so excessive or inadequate as **to shock the judicial conscience of the court**." *Id.* at 905-06 (citing *Gregory*, 220 F.3d at 443).

Feb. 5, 2016 Order (ECF 102) at 23 (emphasis added).

In analyzing the jury verdict with respect to the mental anguish and loss of society that Shauna Smith suffered as a result of the loss of her son, the Court took care to recognize the unique and special relationship Shauna Smith had with her son Kenneth Smith. And the Court acknowledged that Shauna Smith has suffered so deeply and profoundly at her son's loss that she has contemplated suicide, and that she continues to suffer anxiety and depression, that every day she feels like a "walking zombie," and that her "spirit has been broken." The Court acknowledged that, "[b]ased on the testimony, the court finds that the Shauna Smith has suffered immensely and undoubtedly will continue to suffer as a result of her son's death." Feb. 5, 2016 Order (ECF 102) at 24-25. Clearly the evidence supported the verdict on mental anguish and loss of society.

And yet the Court offered no reasoning in support of the remittitur relating to Shauna Smith's mental anguish and loss of society other than to state that "[w]hile it is impossible to put

a precise value on Shauna Smith's mental anguish and loss of society, the court finds that the maximum amount the jury could reasonable find to be compensatory for her loss is $2,500,000."

The Court did not reason that the original verdict was beyond the range supported by proof, nor that it shocked the conscience, nor that the verdict was a result of a mistake, nor that the verdict resulted from passion, bias, or prejudice. But at least one of these findings is required as grounds for remittitur, as the Court itself set out.

Further, as Plaintiff explained in her opposition to Defendant's Motion to Amend the Jury Verdict, the $4.5 million in wrongful death damages awarded by the jury in this case was <u>not</u> clearly excessive either, and instead is unquestionably in line with the damages assessed both by other juries and by the parties themselves in settlements and verdicts in cases involving similar facts and injuries. For example:

- In 2007, the city of Buena Park, California settled for $5 million before trial in relation to the 2004 death of Juan Herrera, who was shot and killed by a police officer after a car pursuit. The officer claimed Herrera was reaching for a gun. Herrera's family filed suit, and had a forensic expert who was prepared to testify otherwise. *See* Serena Maria Daniels, "Did City Settle to Avoid Jury?" *Orange County Register, July 9, 2007*, available at http://www.ocregister.com/news/herrera-62938-furtado-city.html.

- In June 2015, the City of Albuquerque, New Mexico settled before trial with the family of James Boyd for $5 million after Boyd, a homeless man camping in the Sandia Mountains, was shot in 2014. Boyd had two knives in his hands, and was shot as he appeared to be preparing to surrender. *See* Associated Press, "*Albuquerque to Pay $5m to Family of Homeless Man Killed by Police*," The Guardian, (July 11, 2015), available at http://www.theguardian.com/us-news/2015/jul/11/albuquerque-police-killing-james-boyd-lawsuit.

- In October 2015, in South Carolina, the family of Walter Scott settled with the city of North Charleston for $6.5 million and an agreement precluding Mr. Scott's family from bringing civil claims over his death. Mr. Scott was shot as he ran away from a police officer during a traffic stop. The officer's version of events, involving a fabricated struggle over the officer's taser, was proven to be false through cell phone video shot by a bystander. *See* Richard Fausset, "*Walter Scott Family Reaches a $6.5 Million Settlement for South Carolina Police Shooting Case*," New York Times, (Oct. 8, 2015), available at http://www.nytimes.com/2015/10/09/us/walter-scott-settlement-reached-in-south-carolina-police-shooting-case.html.

3

- Baltimore, Maryland officials voted in September 2015 to approve a $6.4 million pre-suit settlement for the family of Freddie Gray, a 25-year-old black man who died from a spinal cord injury resulting from police use of force. *See* Sheryl Gay Stolberg, *"Freddie Gray Settlement Approved by Baltimore Officials," New York Times (*Sept. 9, 2015), available at http://www.nytimes.com/2015/09/10/us/freddie-gray-baltimore-police-death.html.

- New York City reached a settlement with the family of Eric Garner in July 2015, agreeing to pay $5.9 million to resolve a wrongful-death claim over his killing by the police, who used excessive force, on Staten Island the year before. *See* J. David Goodman, *"Eric Garner Case Is Settled by New York City for $5.9 Million,"* New York Times (July 13, 2015), available at http://www.nytimes.com/2015/07/14/nyregion/eric-garner-case-is-settled-by-new-york-city-for-5-9-million.html.

- In August 2014, the City of Los Angeles reached a settlement for $5 million with the family of Brian Beaird, who led police on a chase, with officers claiming he had reached under his seat during the pursuit, perhaps for a gun, and reached for his waistband as he stumbled out of his mangled car and tried to flee on foot, though video evidence refuted these claims, instead showing Beaird starting to raise his hands as he was shot. *See* Richard Winton, *"L.A. settles police shooting case for $5 million,"* LA Times (Aug. 20, 2014), available at http://www.latimes.com/local/crime/la-me-0821-lapd-shooting-settlement-20140821-story.html.

The wrongful death award of $4.5 million in this case is simply not excessive. The Court's lack of analysis or support for the mental anguish and loss of consortium reduction indicates that the remittitur was arbitrary and wholly discretionary, and does not meet the standards required to impose remittitur. This type of remittitur, substituting the Court's judgment for that of the jury, improperly deprives Plaintiff of her due process rights. *See*, e.g., *Saunders v. Equifax Info. Servs., L.L.C.*, 469 F. Supp. 2d 343, 356-57 (E.D. Va. 2007); *Francois v. Smith*, CV-87-3851 (CBA), 1989 U.S. Dist. LEXIS 19104, at *16-17 (E.D.N.Y. July 28, 1989); *Ross-King-Walker, Inc. v. Henson*, 672 So. 2d 1188, 1194 (Miss. 1996); *Blancett v. Nationwide Care*, Case No. 98 CA 4, 1998 Ohio App. LEXIS 6504, at *26-27 (Ct. App. Dec. 16, 1998); *McCleese v. Glockner Chevrolet Co.*, 6 Ohio App. 2d 69, 72, 216 N.E.2d 389, 391 (1966).

In addition, the arbitrary nature of remittitur on wrongful death damages is also evident in the Court's analysis of damages awarded as compensation for the loss of support Shauna Smith suffered in relation to the earning capacity of Kenneth Smith over his lifetime.

The Court took care to recognize that testimonial evidence established that Kenneth was intelligent, witty, and creative. Testimony from Shauna Smith and Martez Little also showed that Kenneth was hard-working and dedicated to achieving his goals. In fact, as the Court noted, the evidence also showed that Kenneth Smith had already attained early success as a hip hop artist. Yet, the Court capped its damages assessment for Kenneth's lifetime earning capacity at $500,000.00. Though the Court acknowledged that this is a modest assessment, Plaintiff asserts that it is unjustifiably low. Had Kenneth worked for another forty years, until a very young retirement age of sixty years old, and if his total earning capacity was $500,000.00, he would have only earned $12,500.00 per year during those working years, and would have retired in utter poverty.[1] Assessing only $500,000.00 for lifetime earnings is extraordinarily low, given the evidence showing Kenneth's achievements, intelligence, and drive.

In conclusion, the remittitur reduction in the amount of $1.5 million is arbitrary and unjustified. The Court's remittitur ruling usurped the jury's role, in violation the Seventh Amendment. Plaintiff asks that the Court reconsider the remittitur, and reinstate the original jury verdict for wrongful death damages in the amount of $4.5 million.

---

[1] In fact, an income level of $12,500.00 per year is barely above the federal poverty guideline for one-person households, which was set at $11,170.00 in 2012. *See* 2012 Poverty Guidelines, Federal Register Notice, available at https://aspe.hhs.gov/2012-poverty-guidelines-federal-register-notice.

II.  **Forcing Plaintiff to Choose Between Consenting to the Remittitur and a New Trial on Damages Is Unconstitutional.**

Should the Court deny Plaintiff's Motion to Reconsider Remittitur, and deny Plaintiff's request to reinstate the original jury verdict for wrongful death damages in the amount of $4.5 million, the result is unconstitutional: Plaintiff will effectively be forced to respond to blackmail, with the verdict held hostage.

"[T]he right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const., Amdt. 7.

And as the United States Court of Appeals for the First Circuit has noted, "[p]lacing a value on human suffering is always a subjective enterprise, turning on the jury's sensibilities to the facts and circumstances presented in a particular case." *McDonald v. Federal Laboratories, Inc.,* 724 F.2d 243, 247 (1st Cir. 1984).

And as a result, the wholesale remittitur practiced in federal courts, and as Plaintiff is potentially faced with in this case, exceeds constitutionally permissible bounds. Though a judge at common law had the power to correct an excessive jury verdict or order new trials on the ground of excessiveness, the common law judge's power did not extent to substituting his own evaluation of the facts adduced at trial for that of the jury. And federal judges today are given no such power in any other context. Instead, he must grant a new trial.

But when a federal trial judge orders remittitur on a factual, rather than legal, basis, he is substituting his own evaluation of the facts for the jury. Though a plaintiff has the option to refuse to remit and thus elect a new trial, the option to elect a new trial is an unrealistic and coercive option: most plaintiffs have no real choice but to remit.

But a judge's experience in prior cases cannot serve as a substitution for the determination by the jury, where pain and suffering damages are subjective, factual determinations. Such a mathematical and mechanical approach to evaluation of damages completely undercuts the function of the jury which is to decide how much any particular plaintiff has suffered and will suffer in the future because of the injury. Adjusting the verdict in line with a judicial preconception of what a particular type of injury is worth is almost the same as if trial judges provided juries with "schedules" of allowable ranges of recovery for particular types of injuries, much like the schedule provided with most liability insurance policies. *See*, e.g,. Irene Deaville Sann, Remittiturs (and Additurs) in the Federal Courts: An Evaluation with Suggested Alternatives, 38 CASE W. RES. 157, 206 (1987).

In the instant case, the Court has provided no analysis for its remittitur and reduction amount other than to say that "the court finds that the maximum amount the jury could reasonable find to be compensatory for her loss is $2,500,000." What guides the Court here other than intuition and prior experience is unclear, and this remittitur unconstitutionally usurped the role of the jury, in violation of the Seventh Amendment.

In conclusion, the remittitur reduction in the amount of $1.5 million is arbitrary and unjustified. The Court's remittitur ruling usurped the jury's role, in violation the Seventh Amendment. Plaintiff asks that the Court reconsider the remittitur, and reinstate the original jury verdict for wrongful death damages in the amount of $4.5 million.

**III.    If Plaintiff Is Forced to Choose a New Trial, Precluding Expert Evidence on Damages Is Impermissible.**

If the Court maintains that the evidence already presented in the first trial did not justify the jury's $4.5 million wrongful death damages, then Plaintiff must be afforded the opportunity to

7

present additional evidence, including expert evidence, in support of damages.

In its Order on remittitur, the Court held that "[t]he damages issue stands alone, and thus, the retrial–should Plaintiff choose not to accept the remittitur–shall be limited to damages. However, the court feels it unfair to allow Plaintiff to gain the benefit of hindsight by putting on a damages expert witness when she did not do so in the first trial." The Court justified this decision, noting that "[t]he court has 'broad discretion' in its control and management of new trials," and that "[i]n making these decisions, district courts should be guided by 'considerations of fairness and justice to all parties.'" Order (March 10, 2016), ECF-107 at 3-4 (internal citations omitted).

There is no real "choice" for Plaintiff here: the Court's order requires Plaintiff to accept a lower damages amount, or go to a new trial where Plaintiff cannot submit all evidence the jury would find relevant. This is a paradoxical choice, as the Court has already determined that the damages evidence already presented, which did not include expert evidence, did not justify $4.5 million in wrongful death damages. Yet the Court now intends to bar Plaintiff from presenting additional relevant evidence which would support the amount reached by the jury.

Further, The Court's decision to preclude expert witnesses renders Plaintiff's option to elect for a new damages trial as effectively moot for an additional reason: this approach creates a foregone conclusion on the value of damages. Therefore, there is little sense at this stage in deeming Plaintiff's wrongful death damages on behalf of Shauna Smith as being worth $3,000,000.00, and deeming the loss of support related to Kenneth Smith's earning capacity at $500,000.00, but then providing for a new trial. Through the law of the case doctrine, this "option" for a new trial on damages, but limiting the evidence to that in the first trial, mandates an award of $3,500,000.00 or less in any subsequent damages trial.

8

Yet, even if Plaintiff is limited in a new damages trial to presenting the same evidence from the original trial, the new jury could still award the same, or even higher damages based on the original evidence. But without new evidence to consider in the inevitable remittitur motion from Defendant Jones, if the jury awards the same, or even more, in damages in the new damages trial, Plaintiff and the Court are faced with a foregone conclusion on the question of whether there should be remittitur again, after a the new damages trial.

But at that stage, after a new damages trial and after a new remittitur motion by Defendant, the Court again would be required to present the opportunity to Plaintiff to choose between consenting to the remittitur and a new damages trial. This creates an ongoing cycle of false choices for Plaintiff, with a cap on damages already predetermined.

Where a court says when there is a remittitur and new trial on damages, the court is not permitted to limit the evidence that comes in. *See*, e.g., *Pincus v. Pabst Brewing Co.*, 752 F. Supp. 871, 875-76 (E.D. Wis. 1990). As noted in *Pincus*, constricting the admission of evidence at a new trial on damages would impermissibly draw boundaries before the new damages trial, rendering controlling decisions on the strength and probativeness of evidence, rather than analyzing evidence in the record and deciding whether it has a rational connection with the new trial's damages award. Further, "the law of the case doctrine" does not control when evidence in a subsequent trial produces substantially different evidence, and the existence of this exception dictates that at a new trial, new evidence can be received. *Pincus*, 752 F. Supp. at 876, citing B*arber v. Int'l Brotherhood of Boilermakers*, 841 F.2d 1067, 1072 n. 5 (11th Cir. 1988).

Thus, it is impermissible for the Court to preclude expert evidence in the new trial. The Court's concern for fairness and justice to all parties is easily resolved if expert witnesses are permitted in the new damages trial: the Court need only provide time for both parties to retain

9

expert witnesses and engage in related trial preparation. Therefore, should the Court deny Plaintiff's Motion for Reconsideration and force Plaintiff to consent to remittitur or elect for a new trial on damages, then the Court should not preclude expert evidence in the new trial.

### IV. Conclusion

Plaintiff asserts that the Court's Remittitur Order has no lawful basis and is unconstitutional. Plaintiff further asserts that should the Court deny Plaintiff's Motion for Reconsideration and force Plaintiff to consent to remittitur or elect for a new trial on damages, then it is impermissible for the Court to preclude expert evidence in the new trial.

For the foregoing reasons, Plaintiff asks the Court to reinstate the original jury verdict for wrongful death damages in the amount of $4.5 million, or in the alternative, grant Plaintiff an additional 7 days from the date of its decision on the instant motion to either consent to the remittitur or request a new trial on damages, and that the new trial option not preclude expert evidence.

Respectfully submitted,

FRIEDMAN & GILBERT

*s/Terry H. Gilbert*
TERRY H. GILBERT (0021948)
JACQUELINE C. GREENE (0092733)
55 Public Square, Suite 1055
Cleveland, OH 44113-1901
Tel:    (216) 241-1430
Fax:    (216) 621-0427
Email: tgilbert@f-glaw.com
Email: jgreene@f-glaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/Terry H. Gilbert*
TERRY H. GILBERT (0021948)
Attorney for Plaintiff
